OPINION
This appeal is taken by defendant-appellant Dashawn Lamar Young from the judgment entered by the Court of Common Pleas of Marion County convicting him of aggravated burglary, abduction, felonious assault, unlawful possession of a dangerous ordnance, having a weapon while under a disability, and trafficking in cocaine.
On February 11, 1999, Dashawn Lamar Young, Michael A. Jackson, Susan Elizabeth Stewart, Ronald Lee Jacobs and Willie L. Evans were indicted on twelve counts including aggravated burglary, kidnapping, abduction, extortion, felonious assault, unlawful possession of a dangerous ordnance, having weapons while under a disability, tampering with evidence, trafficking in cocaine, and possession of cocaine. The events leading up to the indictment follow.
Young, Jacobs and Stewart came to Marion from Columbus to start up a business selling cocaine. While in Marion they stayed at the home of a friend, Willie Evans. Jackson, another mutual friend of the group, also stayed at Evans' home.
During the evening of January 31, 1999, Young sold cocaine to Terry Kinder for fifty dollars on credit. The next morning, Young became extremely irate because Kinder had not paid him. He and Jackson broke into to Tracey White's home, where Kinder was staying. After entering the residence, Young was hysterical and began hitting people in the apartment including Terry Kinder.
Terry Kinder is deaf and mute, conditions which inhibited her understanding of all being said, but frightening her. In her fear she wrote messages begging Young and Jackson to take her to the bank where she could pay them so that they would stop hurting her. Jackson and Young told White that they were taking Kinder to the bank so that she could withdraw the money she owed to them. Young and Jackson forcibly took Kinder from White's home and placed her in their car. Kinder had assumed they were taking her to the bank. However, instead of taking Kinder to the bank, Young and Jackson took her to Willie Evans' home where Stewart, Evans and Jacobs were staying. Once in Evans' home Young violently struck Kinder on the head with a sawed off shotgun, supplied by Evans, causing a wound which ultimately required medical treatment including sixteen stitches.
Leaving the sawed off shot-gun at the house but carrying a loaded revolver the group of five, led by Young, took Terry Kinder to the bank to withdraw her money. While they were on their way to the bank, Tracey White fearing that Terry Kinder would be killed called the police. She informed the police that the group had taken Kinder to the bank. When Evans and Young entered the bank with Kinder, the bank immediately called the police and attempted to delay the transaction. After obtaining her cash withdrawal from the bank, Kinder paid Young the fifty dollars she owed him. As they left the bank, they were apprehended by the police.
On May 6, 1999 following a four day jury trial, Young was found guilty of six felonies and was sentenced to a total of ten years in prison. On appeal from that conviction Young makes several assignments of error.
 1. Defendant's Constitutional Right to Equal Protection was violated when the trial court permitted the prosecuting attorney to use a peremptory challenge to exclude a prospective African-American juror.
In his first assignment of error Young asserts that the State violated his equal protection rights by using peremptory challenges to exclude the only African-American on the jury panel. The Equal Protection Clause of the United States Constitution prohibits purposeful discrimination by the State in the exercise of its peremptory challenges that work to exclude minority groups from service on juries. Batson v. Kentucky (1986) 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69, State v. Hernandez (1992) 63 Ohio St.3d 577. In order to prove purposeful discrimination the defendant must show that members of a cognizable racial group were peremptorily challenged and that the facts and any other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude jurors on account of their race. Id. at 89.
Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging the jurors. Hernandez at 582. The prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause, rather the prosecutor need only articulate a race-neutral explanation related to the particular case to be tried. Id. at 582. Any conclusion by the trial court that the state did not possess discriminatory intent in the exercise of its peremptory challenges will not be reversed on appeal absent a determination that it was clearly erroneous. Id. at 583.
The record reveals that the State used a peremptory challenge to remove Mrs. Jones from the jury. Upon exercise of that challenge, defense counsel objected, arguing that if Mrs. Jones were excused the jury would have zero black jurors on the panel and the State was excusing her based on her race. The State then voluntarily justified its challenge. The State responded as follows:
 "One, Mrs. Jones — we went through an extended exchange with her earlier. In fact, we moved to excuse her for cause at one point. She was extremely equivocating on whether she can even be fair and impartial. At one point she said she could not. Another point she said, "Well maybe she could." She talked about strong attitudes she had, although she wasn't very descriptive on what those were. Pretty much when we asked her questions, routinely there was this long pause and delay which and then you didn't get much of an answer. It really dealt with whether she could be fair and impartial.
 Beyond that, during her testimony she indicated that she did know Mr. Jackson, had known him lifelong. He's one of the Defendant's in the case. She knew his parents, his family. And again when she was asked whether she could set that aside, she thought she probably could was the best, you know, she could do."
The representations made by the State in the above explanation are supported by the record. While such concerns may not be enough to exclude a juror for cause they need not rise to that level.[1] The representations made by the State were race-neutral and related to the case at hand. As a result, this court cannot say that the actions taken by the trial court in overruling the objection of defense counsel were clearly erroneous. No error having been shown, Young's first assignment of error is overruled.
 2. The trial court committed prejudicial error by permitting the State to have the jury charged with an unconstitutional inference concerning defendant's count of aggravated burglary.
Young argues that the jury was misinformed by the trial court's aggravated burglary charge wherein the court stated that the intent to commit a felony may be formed during the trespass of the occupied structure. Young made a timely objection to the jury charge, claiming that the instructions were not published, suggested Ohio Jury Instructions, but rather, were based upon an erroneous decision of this Court and the Supreme Court of Ohio and therefore, violated Young's right to a fair trial and due process of law.
The trial court's jury instructions on the offense of aggravated burglary included the following language:
 Where a defendant lawfully enters a residential premises, the privilege to be in or upon those premises can be inferred to have been revoked when the defendant thereafter committed or aided or abetted another in committing a violent felony directed against another person in the premises who had the ability and authority to revoke the privilege.
* * *
 With respect to Count 1 of the Indictment, the State alleges that Defendant Young trespassed in the residence of Tracy While located at 718-C East Fairground Street, Marion, Ohio, with purpose to commit the criminal offenses of kidnapping, abduction, extortion, assault, coercion, and menacing. If you find that Defendant Young, while trespassing in the residence, had a purpose to commit any one of those criminal offenses, then the State has established this element of the offense of aggravated burglary.
 Since a trespass may be committed either by unlawfully entering or remaining on the land or premises of another, a defendant may be found guilty if he had the purpose to commit a criminal offense at any time while unlawfully remaining on the premises.
This Court has previously held that the above jury instructions are indeed proper. State v. James Stefanski (March 29, 1999), Marion App. No. 9-98-63, unreported; State v. Antonia Miguel Fontes (November 11, 1998), Union App. No. 14-97-45, unreported; The Supreme Court of Ohio has not addressed the issue directly but has decided that the inference allowed by the instruction is not unconstitutional when it held "[e]ven assuming lawful initial entry, the jury was justified in inferring from the evidence that appellant's privilege to remain in Karen's parent's home terminated the moment he commenced his assault on her." State v. Steffan (1987), 31 Ohio St.3d 111, 115. This pronouncement by the Ohio Supreme Court precludes any holding by this Court that the jury instructions are based on an erroneous conclusion of law. As a result, no error having been shown, Young's second assignment of error is overruled.
 3. The trial court committed prejudicial error by not permitting the jury to hear relevant and material evidence adduced from witness, Detective Foster, and therefore violated defendant's Constitutional Right to a fair trial and Due Process of Law.
Next Young argues that the trial judge committed prejudicial error by disallowing the testimony of Detective Foster concerning Terry Kinder's history of filing false police reports. Initially, we observe that the trial court has broad discretion in determining the admissibility of evidence. Evid.R. 104. Any error alleged in the admission of evidence may only be shown by establishing that the trial court abused its discretion. Metaullics Systems Company L.P. v. Molten Metal Equipment Innovations, Inc. (1996), 110 Ohio App.3d 367, 674 N.E.2d 418. "The term abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157, 404 N.E.2d 144, 149.
Evidence of a person's character is generally inadmissible to show that he acted in conformity therewith. Evid.R. 404(A). However, evidence of the character of a witness on the issue of credibility is admissible in accordance with the Rules of Evidence. Evid.R. 404(A)(3). Evidence Rule 608 outlines the type of evidence that is admissible to prove the character and conduct of a witness on the issue of credibility. It reads:
 (A) Opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation but subject to these limitations:
 (1) the evidence may refer only to character for truthfulness or untruthfulness, and
 (2) evidence of truthful character is admissible only the after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
 (B) Specific Instances of Conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided by Evid.R. 609, may not be proved by extrinsic evidence. They may however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness * * *.
The record discloses that Defense Counsel subpoenaed Detective Foster and indicated an intention to have her testify that Terry Kinder had previously made a false report of rape, that Detective Foster had interviewed her and believed her story to be true. However, the trial court excluded Detective Foster's testimony on the basis of Evid.R. 608(B). The record also reveals that Terry Kinder did, in fact, testify that she had indeed made a prior false report to the Marion Police Department and went to jail for making the report. Further, Defense Counsel was given the opportunity to cross-examine Kinder concerning the incident. Considering the record presently before us in light of the Rules of Evidence this Court cannot say that it was an abuse of discretion for the trial court to exclude Detective Foster's testimony as extrinsic evidence of the character of Terry Kinder for truthfulness. No error having been shown, Young's third assignment of error is overruled.
 4. The trial court erred in not granting defendant's motion for mistrial because of the State's improper argument during closing remarks.
Young next claims that the trial judge erred when he refused to order a mistrial after the Prosecutor made inappropriate remarks during closing arguments. The relevant inquiry regarding a prosecutor's improper statements during closing argument is "whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." State v. Smith (1984), 14 Ohio St.3d 13, 14. This inquiry is guided by consideration of four factors: 1) the nature of the remarks, 2)whether an objection was made by counsel, 3) whether corrective instructions were given by the court, and 4) the strength of the evidence against the defendant. Sidney v. Walters (1997),118 Ohio App.3d 825, 829. Finally, it is well settled that prosecutorial misconduct is not grounds for reversal unless it so taints the proceedings that it deprives the defendant of a fair trial. See, e.g., State v. Phillips (1995), 74 Ohio St.3d 72, 90
(reversed on other grounds).
Young argues before this Court that the Prosector made improper remarks during his closing argument. His brief points to several pages in the transcript where improper statements were supposedly made. However, he does not tell this Court which statements were improper or why. Moreover, not only has he refrained from identifying the prejudicial statements, he has failed to inform this Court how he has been materially prejudiced. It is not the duty of this Court to comb the record in search of the evidence necessary to sustain Young's claimed error. As a result, no error having been shown, Young's fourth assignment of error is overruled.
 5. The trial court committed prejudicial error by allowing the jury to rehear the entire testimony of the State's main witness, Terry Kinder, without providing a cautionary instruction and/or permitting the jury to rehear defendant's evidence.
Young also claims that the trial court erred when it allowed the jury to rehear the entire testimony of Terry Kinder without providing a cautionary instruction to the jury or permitting the jury rehear the defendant's evidence. The Supreme Court of Ohio has held that "[a]fter jurors retire to deliberate, upon request from the jury, a court in the exercise of sound discretion may cause to be read all or part of the testimony of any witness, in the presence of or after reasonable notice to the parties or their counsel." State v. Berry (1971), 25 Ohio St.2d 255, paragraph four of the syllabus. The term "abuse of discretion" implies that the court's ruling was "unreasonable, arbitrary, or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 148.
The record reveals that during deliberations in the instant case, the jury sent out a question, "Can we have copies of Terry Kinder's testimony?" The trial court advised the jury that no transcript had been prepared and that traditionally the jury is asked to rely on their collective memories, but offered the jury the possibility of some of the testimony being re-read if that was necessary. The foreman explained to the court that they could not remember if Terry Kinder was being held against her will or went voluntarily and without the testimony the jury would not be able to resolve the question.
The trial court then returned the jury to the jury room while it consulted further with counsel. Twenty minutes later, the trial court reconvened the jury and advised them that the court reporter could read the testimony back to them if they desired, and that it would take a little over an hour to read the testimony. The jury went back into the jury room to determine amongst themselves whether or not they wanted the testimony read back, and if so, whether they wanted that done that day or whether they wanted to come back the next morning. They jury decided that they would like to have Terry Kinder's testimony read back to them that night in its entirety.
Over the objections of defense counsel, the court ordered the testimony be read back to the jury in its entirety. Defense counsel did not request a cautionary instruction with respect to Terry Kinder's testimony, nor did he request to have any other testimony read to the jury. The trial court acted within its discretion when it reread the testimony to the jury. Young has failed to point to any part of that action that was arbitrary or unreasonable. As a result, this court cannot say that the action of the trial court was an abuse of discretion. No error having been shown, Young's fifth assignment of error is overruled.
 6. Upon a full review of the trial court's transcript and record it is clear that the Defendant was denied a fair trial and Due Process of Law because of multiple erroneous rulings and errors in this cause.
In his sixth assignment of error, Young claims that the cumulative effect of errors outlined above are prejudicial enough to call the verdict of the trial court into question. Since this court has considered and overruled every assignment of error alleged by Young at trial we will not revisit each assignment of error previously overruled. No error having been shown above at trial there can be no cumulative error. As a result, Young's sixth assignment of error is overruled.
 7. The court's verdict of guilty was against the manifest weight of the evidence and without sufficiency of evidence beyond a reasonable doubt for a finding of guilty.
Young next asserts that the decision of the jury to convict was not supported by sufficient evidence and even if there was sufficient evidence it is still unjust because the weight of the evidence was in favor of acquittal. Initially, we observe that "on the trial of a case, either civil or criminal, the weight to be given the evidence and credibility of the witnesses are primarily for the trier of facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Indeed, a judgment may be reversed on the weight of the evidence only if there is a concurrence of all three judges hearing the cause on appeal. Section 3(B)(3), Article IV, Ohio Constitution.
The legal concepts of sufficiency of the evidence and weight of the evidence are different. "Sufficiency is a term of art meaning that the legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins (1997), 78 Ohio St.3d 380, 382. When a defendant challenges the sufficiency of evidence, we determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. To reverse a judgment of a trial court when there is insufficient evidence to support it, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary. Thompkins at paragraph three of the syllabus.
A claim that the verdict was against the manifest weight of the evidence does not mean that the evidence to convict was insufficient or inadequate. "Weight of evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541. In reviewing a claim that the conviction was against the manifest weight of the evidence the court considering the entire record:
 "* * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, paragraph three of the syllabus.
The power to reverse a conviction and order a new trial is discretionary and should only be used in exceptional circumstances when the evidence weighs significantly against the conviction. Id. at paragraph three of the syllabus.
Young agrees that there was sufficient evidence presented for his conviction of unlawful possession of a dangerous ordnance, having weapons while under a disability, and trafficking in cocaine. However, he claims that the convictions for aggravated burglary, abduction and felonious assault were improper. After thorough review of the record, evidence and testimony presented at trial were credible and if believed, disbelieving the conflicting testimony, support a finding of Young's guilt beyond a reasonable doubt and thus conviction, rather than acquittal. Viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. Therefore we do not conclude that the jury lost its way or that by its verdict has caused a miscarriage of justice. No error having been shown, Young's final assignment of error is overruled and the judgment of the Court of Common Pleas of Marion County is affirmed.
Judgment affirmed.
HADLEY and WALTERS, JJ., concur.
[1] Initially, the Prosecutor did move to excuse this juror for cause, when she stated that she would not approach the case with an open mind. After Defense Counsel objected to removal for cause, the prosecution did not pursue a removal for cause and later used a peremptory challenge instead.